IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL LEE COBB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-551-AMG |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Michael Lee Cobb ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1382. (Doc. 1). The Commissioner answered the Complaint and filed the Administrative Record ("AR") (Docs. 7, 8), and the parties have fully briefed the issues. (Docs. 19, 26, 27, 30).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 11, 15). Based on the Court's review of the record and issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

I.      **The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. §§ 404.1521, 416.921; *see id.* §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is

engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience."  *Id*.  "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work."  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."  *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

(10th Cir. 2007). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History

Plaintiff filed applications for DIB and SSI on July 10, 2020, alleging a disability onset date of August 5, 2016. (AR, at 101, 103, 105, 107, 298). The SSA denied the applications initially and on reconsideration. (*Id.* at 159-62, 166-68, 176-78, 182-83). Then an administrative hearing was held on September 1, 2021. (*Id.* at 44-66). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id.* at 4-14). The Appeals Council subsequently denied Plaintiff's request for review. (*Id.* at 20-25). Thus, the ALJ's decision became the final decision of the

Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## III. The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 5, 2016, the alleged onset date. (AR, at 6). At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of diabetes with diabetic ketoacidosis, schizophrenia, depression, and anxiety. (*Id*. at 7). At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the listed impairments. (*Id.*) The ALJ then determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ladders, ropes, or scaffolds and ramps or stairs. He can have no exposure to hazards defined as machinery with moving mechanical parts, use of commercial vehicles, and exposure to unprotected heights. [Plaintiff] can perform simple, routine, and repetitive tasks. He can have no interaction with the public but may be in the vicinity of the public. He can occasionally interact with coworkers.

(*Id*. at 8-9). Then, at Step Four, the ALJ found Plaintiff had no past relevant work. (*Id.* at 13). At Step Five, however, the ALJ found Plaintiff could perform jobs existing in significant numbers in the national economy, such as housekeeping cleaner, laundry worker, and mail clerk. (*Id.*) Thus, the ALJ found that Claimant had not been under a disability since August 5, 2016. (*Id.* at 14).

## IV. Claims Presented for Judicial Review

Plaintiff contends the ALJ: (1) did not properly consider the prior administrative medical findings; (2) did not properly analyze Plaintiff's subjective complaints; (3) erred at Step Five because Plaintiff could not maintain any full-time employment; and (4) found

5

that Plaintiff could perform jobs that are incompatible with the RFC. (Doc. 19, at 4-15; Doc. 27, at 3-4). The Commissioner asserts Plaintiff's claims are without merit. (Docs. 26, 30). The Court finds reversal is required because the ALJ did not properly consider the prior administrative medical findings related to Plaintiff's mental impairments.

V.  **The ALJ Did Not Properly Consider the Supportability and Consistency Factors in His Review of the Prior Administrative Medical Findings Related to Plaintiff's Mental Impairments.**

An ALJ is required to evaluate every medical opinion and prior administrative medical finding of record. *See* 20 C.F.R. §§ 404.1520c(b); 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s)" and whether a claimant has a limitation or restriction in the ability to perform physical, mental, or other demands of work or to adapt to environmental conditions. *Id.* §§ 404.1513(a)(2); 416.913(a)(2). "A prior administrative medical finding is a finding, other than the ultimate determination about whether [a claimant] is disabled, about a medical issue made by . . . Federal and State agency medical and psychological consultants at a prior level of review . . . in [the] current claim based on their review of the evidence in [the] case record." *Id.* §§ 404.1513(a)(5); 416.913(a)(5) (including the existence and severity of impairments and symptoms, statements about whether an impairment meets or medically equals a listing, the RFC, and how failure to follow prescribed treatment relates to the claim).

6

An ALJ considers medical opinions and prior administrative medical findings using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim." 20 C.F.R. §§ 404.1520c(c); 416.920c(c).  Supportability and consistency are the most important factors.  *Id.* §§ 404.1520c(a), 416.920c(a).  "Supportability" examines how closely connected a medical opinion or prior administrative medical finding is to the medical source's objective medical evidence and supporting explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s) is, the more persuasive the medical opinion(s) or prior administrative medical findings will be."  *Id.* §§ 404.1520c(c)(1); 416.920c(c)(1).  "Consistency," on the other hand, compares a medical opinion or prior administrative medical finding to the other evidence: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* §§ 404.1520c(c)(2); 416.920c(c)(2).  The ALJ must articulate how persuasive he finds a medical opinion or prior administrative medical finding.  *Id.* §§ 404.1520c(b); 416.920c(b). In doing so, the ALJ is required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings."  *Id.* §§ 404.1520c(b)(2);

416.920c(b)(2).³ The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Joy Kelley, PhD, and William H. Farrell, PhD – the state agency medical consultants – found Plaintiff could: (1) perform simple tasks with routine supervision; (2) sustain concentration, persistence, and pace for a normal workday and workweek; (3) relate to peers and supervisors on a superficial work basis; (4) not relate to the general public; and (5) adapt to a work environment. (AR, at 80-81, 97-98, 130, 155). The ALJ's entire consideration of these findings was as follows:

> The prior administrative medical findings concerning mental abilities are unpersuasive. In light of [Plaintiff's] largely unremarkable mental examinations, in particular with regard to cooperation, limitation in interaction with supervisors is not warranted. Moreover, his hallucinations suggest limitation to repetitive tasks. The consultants did not adequately support the exclusion of such a limitation. These inconsistencies and unsupported statements render the consultants' findings unpersuasive.

(*Id.* at 12). The ALJ's resulting mental RFC provided that Plaintiff "can perform simple, routine, and repetitive tasks. He can have no interaction with the public but may be in the vicinity of the public. He can occasionally interact with coworkers." (*Id*. at 9). Thus, the ALJ declined to adopt the limitation that Plaintiff relate to peers and supervisors on only a superficial work basis, permitted occasional interaction with coworkers, and added a limitation to repetitive tasks.

---

³ An ALJ must consider, but need not explicitly discuss, the remaining factors (relationship with the claimant, specialization, and other factors) unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record. *See* 20 C.F.R. §§ 404.1520c(b)(2), (3); 416.920c(b)(2), (3).

While the ALJ articulated the persuasiveness of the prior administrative medical findings, his discussion of the supportability and consistency factors is excessively sparse and conclusory and thus requires remand.  The ALJ based his decision to not include any limitation on Plaintiff's interaction with supervisors and to permit occasional interaction with coworkers on the evidence of Plaintiff's "largely unremarkable mental examinations, in particular with regard to cooperation." (*Id*. at 12).  Earlier in the decision, the ALJ noted Plaintiff had a "cooperative attitude . . . on examination," was "calm, cooperative, and displayed appropriate affect with fair judgment and intact insight," and similar benign findings.  (*Id*. at 8, 10-11).  However, Dr. Kelley and Dr. Farrell supported their findings regarding Plaintiff's mental impairments with evidence that: Plaintiff stated he wanted to die, wanted to kill his grandfather with a knife, wanted to kill his uncle, he "is manipulative and not forthcoming," was verbally abusive, "was "[d]eviant and uncooperative with exam," was fired by a doctor, has problems with anger management, is quick to overreact, choked his sister, had been aggressive with family members, has "[a]nger outbursts [that] come from arguments with others and result in physical altercations or the destruction of property," he has "trouble getting along with others," he has "trouble following verbal instructions," he "cannot cope with stress or change," he "has breaks where he yells and gets into fights," he "believes people are against him," and "he has threatened people." (AR, at 73-75, 90-92, 118-120, 143-45).  The ALJ did not address this evidence at all.

"It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).  "[I]in addition to discussing the evidence

9

supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Because the ALJ did not address the large amount of significantly probative evidence relating to Plaintiff's difficulties interacting with others, the required supportability and consistency analysis is deficient and not sufficiently specific to permit review.

The error is not harmless.  It is possible the ALJ would have come to a different conclusion regarding Plaintiff's ability to interact with supervisors and peers had he properly considered the supportability and consistency factors.  If so, Plaintiff may not be able to perform the jobs identified by the ALJ at Step Five.  Those jobs – housekeeper, laundry worker, and mail clerk – are unskilled because they have a "specific vocational preparation" (SVP) of 1-2.  *See* SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("unskilled work corresponds to an SVP of 1-2"); DOT 323.687-014, 1991 WL 672783 (housekeeper); DOT 302.685-010, 1991 WL 672657 (laundry worker); DOT 209.687-026, 1991 WL 671813 (mail clerk).  "Unskilled work generally requires . . . '[r]esponding appropriately to supervision.'" *Vigil*, 805 F.3d at 1204 (quoting SSR 96–9p, 1996 WL 374185, at *9 (July 2, 1996)).  Because being able to "relate only on a superficial work basis . . . indicate[s] that Plaintiff has less than a full capacity to respond appropriately in work situations," the Court cannot conclude that Plaintiff could perform the unskilled work.  *Randolph v. Colvin*, 2014 WL 4930547, at *2 (N.D. Okla. Oct. 1, 2014).

Furthermore, the ALJ stated that Plaintiff's "hallucinations suggest limitation to repetitive tasks" and stated that the medical consultants "did not adequately support the

10

exclusion" of a limitation to repetitive tasks. (AR, at 12). Dr. Kelley and Dr. Farrell noted that Plaintiff reported the following in his medical records: (1) constant auditory hallucinations (including directing him how to respond to the examiner's questions) in October 2017; (2) auditory hallucinations in April 2018; (3) hearing voices and possible visual hallucinations in September 2019; (4) hearing derogatory voices in June 2020; (5) hearing voices in what were described as "more delusions than hallucinations" in July 2020; and (6) "actively hallucinating" in August 2020. (*Id.* at 144). The doctors did not explicitly tie any of their limitations or lack of limitations to the hallucinations. However, the ALJ provides no explanation in terms of either supportability or consistency for why he believes that "hallucinations suggest limitation to repetitive tasks." (*Id.* at 12). Moreover, "an ALJ cannot substitute [his] lay opinion for that of a medical professional." *Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007)

The ALJ's only other statement explaining his analysis of the medical opinions is that "[t]hese inconsistencies and unsupported statements render the consultants' findings unpersuasive." (AR, at 12). But the ALJ never explained what was lacking in the supporting explanations. In other words, this conclusory statement is not "sufficiently specific" to permit meaningful review. *See Oldham*, 509 F.3d at 1258.

On remand, the ALJ should engage in a proper discussion of the supportability and consistency factors in determining the persuasive value of the prior administrative medical

findings regarding Plaintiff's mental impairments.[4] The court declines to address Plaintiff's remaining objections to the ALJ's decision "because they may be affected by the ALJ's treatment of th[e] case on remand." *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## VI.   Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **REVERSES** the decision of the Commissioner and **REMANDS** the matter for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED** this 14th day of June, 2023.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE

---

[4] The ALJ may still find the findings not persuasive on remand, but he must properly explain his determination.